# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

GLORIA GUTIERREZ,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C13-4091-MWB

**REPORT AND
RECOMMENDATION**

———————————

Plaintiff Gloria Gutierrez seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Gutierrez contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I.  BACKGROUND

Gutierrez was born in 1961, has a ninth grade education and has previously worked as a commercial cleaner, housekeeping cleaner, presser and teacher aide. AR 31, 62-63, 279-80, 354. She protectively filed for DIB and SSI on April 26, 2012, alleging a disability onset date of February 3, 2012, due to anxiety, panic attacks, depression, a dislocated disc in her lower back, neck pain, arthritis, a swollen right leg and suicidal thoughts. AR 12, 276.

Gutierrez's claims were denied initially and on reconsideration. AR 69-126. She requested a hearing before an Administrative Law Judge (ALJ) and on April 29, 2013, ALJ Jan Dutton held a hearing during which Gutierrez and a vocational expert (VE) testified. AR 29-68.

On May 23, 2013, the ALJ issued a decision finding Gutierrez was not disabled since February 3, 2012. AR 12-22. Gutierrez sought review of this decision by the Appeals Council, which denied review on August 26, 2013. AR 1-4. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On September 24, 2013, Gutierrez commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.     *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.    ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

(2)    The claimant has not engaged in substantial gainful activity since February 3, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: Degenerative disk disease, mild; spina bifida occulta at S1; history of lumpectomy for breast cancer in remission (20F).  Mental – depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),    404.1525,    404.1526,    416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: She can lift or carry 20 pounds occasionally and 10 pounds frequently.  There are no restrictions on sitting, standing, or walking; she can do all of these for 6 hours in an 8-hour day.  She can occasionally do postural

activities; i.e., climb, balance kneel, stoop, crouch, crawl. She should avoid concentrated exposure to cold, heat, and hazards. Mental – she can do simple, repetitive work with an SVP of 1 or 2 that would not require extended concentration.

(6)     Step 4 – The claimant is capable of performing past relevant work as a housekeeping cleaner. (20E) This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7)     Step 5- other work: Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform.

(8)     The claimant has not been under a disability, as defined in the Social Security Act, from February 3, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 14-22.


## IV.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Gutierrez argues the ALJ's decision is not supported by substantial evidence for the following reasons:

I.     Medical evidence from her treating physician establishes that Gutierrez's impairments meet a Listing or demonstrate she is unable to perform past relevant work or other jobs in the national economy.

II.    The ALJ erred in evaluating the credibility of Gutierrez and a third-party witness.

III.   The ALJ erred by excluding certain limitations in the hypothetical to the VE.

I will discuss these arguments separately below.

### A.     New and Material Evidence from Treating Physician

Gutierrez argues that new evidence submitted by her treating psychiatrist, Dr. Rodney Dean, establishes that her impairments meet a listed impairment or, alternatively, that she is unable to perform past relevant work or other work available in the national economy. The record before the ALJ contained treatment notes from Dr. Dean dating from October 13, 2011, through March 28, 2013. AR 360-65, 419, 434-35, 447-52, 591-613. After the ALJ issued her decision, an RFC questionnaire dated July 26, 2012, and a letter dated June 27, 2013, from Dr. Dean were added to the record on appeal. AR 628-38.

The regulations describe the review process for new and material evidence as follows:

> [T]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.

8

20 C.F.R. §§ 404.970(b), 416.1470(b). If the Appeals Council considers the new evidence, but declines to review the case, the court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992).

In discussing the evidence from Dr. Dean that was in the record at the time she made the decision, the ALJ noted that he completed a psychiatric assessment in May 2012 and assigned Gutierrez a Global Assessment of Functioning (GAF) score of 59.[1] In June 2012, a counselor in Dr. Dean's office assigned a score of 44.[2] The ALJ gave greater weight to Dr. Dean's assessment based on the fact that he is a medical doctor specializing in psychiatry. AR 18. She also noted Dr. Dean assigned a score of 69[3] in October 2011. In 2012, Dr. Dean found Gutierrez's depression was in partial remission and that she was dealing with several issues including follow-up treatment for breast cancer and worries about losing Medicaid coverage. AR 604. Gutierrez was hospitalized following an overdose of Xanax in December 2012. In February 2013, Gutierrez's GAF score was back to 55 and Dr. Dean noted her psychotic symptoms were improving with medication.

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

[2] A GAF of 41 to 50 indicates the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

[3] A GAF score of 61-70 indicates the individual has some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

AR 19.  The ALJ remarked that Dr. Dean had not provided an opinion about work or disability.  *Id.*

At Step Three, the ALJ considered listings 12.04 and 12.06 in relation to Gutierrez's mental impairments.  The ALJ found the paragraph B criteria were not satisfied because Gutierrez had mild restriction in activities of daily living, mild difficulties in social functioning and moderate difficulties with concentration, persistence or pace.  AR 15.  She noted Gutierrez had experienced one episode of decompensation of extended duration.  AR 16.  She also found the paragraph C criteria were not supported by the record.  Therefore, the ALJ found Gutierrez's mental impairments did not meeting a Listing.

The newly-submitted RFC questionnaire, dated July 26, 2012,[4] indicates that Dr. Dean began treating Gutierrez in October 2011.  AR 628.  He noted that the objective signs of Gutierrez's diagnosed conditions include depressed mood, decreased sleep and concentration, poor attention span, social withdrawal, fatigue and low interest.  *Id.*  He estimated that her symptoms or medication side effects were severe enough to interfere with her attention and concentration up to 100 percent of the day.  He found her ability to tolerate work stress made her incapable of even low stress jobs and her symptoms would interfere to the extent that she would be unable to maintain persistence and pace in competitive employment.  AR 629.  He noted her symptoms markedly impaired her ability to perform activities of daily living and he expected she would miss work four or more times per month due to her symptoms.  AR 630.  Moreover, he thought there would be an "extreme" increase in the severity of Gutierrez's symptoms if she returned to work. AR 631.  Dr. Dean also opined that Gutierrez's conditions caused fatigue that would severely impair her ability to work and she would require multiple, extended breaks during the workday outside the normal breaks provided.  He also found Gutierrez's

---

[4] There is no explanation why this questionnaire was not submitted into the record prior to the administrative hearing on April 29, 2013.

symptoms caused extreme limitations in her ability to perform work functions and she had poor or no ability to perform mental work-related functions.  AR 631-32.

Although Dr. Dean noted that he could not comment on Gutierrez's physical limitations because they were outside his area of expertise, he thought she could only sit for 30 minutes at a time, stand for 10 minutes at a time and walk two to three blocks without rest or severe pain.  AR 634.  He also opined she could occasionally lift and carry 10 pounds or less.  AR 630.

A letter from Dr. Dean was also added to the record after the ALJ issued her decision.  The letter is dated June 27, 2013, and states:

> As the treating psychiatrist for Ms. Gutierrez I have been aware of her frustration in trying to obtain social security disability.  In meeting with her today she indicated that the court had some question in regard to whether or not she is able to work.  We have sent numerous records and have filled out disability forms through the State of Nebraska indicating quite clearly that it is my opinion that Ms. Gloria Gutierrez is unable, due to her severe mental illness, to engage in gainful employment.  She is unable to work at this time.  She has not participated in any sort of occupational/vocational endeavor for more than a year.
>
> In summary I would like to be very clear in terms of what my position is and that is Gloria Gutierrez, because of her severe mental illness, is unable to work or participate in any gainful employment at this time.  I hope this information makes my position clear, however if additional information is needed or desire please feel free to contact me . . . .

AR 638.

After reviewing the new evidence from Dr. Dean, I find that it does not undermine the ALJ's decision or otherwise require remand.  As stated above, my role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made."  *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (quoting *Riley v.*

*Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [me] to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* Of course, this requires some degree of speculation and, therefore, is "a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). The task is necessary, however, because the court "may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision." *Bergmann*, 207 F.3d at 1068 (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

In *Bergmann*, the ALJ denied benefits based primarily on the lack of evidence that the claimant could be expected to remain off work for one year. *Bergmann*, 207 F.3d at 1067. At the time of the ALJ's decision, treatment notes from Bergmann's treating physician were in the record and indicated an ongoing deterioration in the claimant's condition. *Id.* at 1070. On appeal, Bergmann submitted additional treatment notes from three post-hearing visits. *Id.* These notes indicated her mental illness was significantly worse than it had been seven months earlier and indicated her daily activities and social functioning were seriously limited. *Id.* The physician specifically noted in a report dated October 2, 1997, that since he had begun treating Bergmann in June 1996, her condition had steadily worsened. *Id.* In light of this new evidence the court found:

> [T]he picture presented to the ALJ is significantly altered by the additional evidence. Now the evidence shows a claimant who had engaged in gainful employment in the recent past, who is currently on unpaid medical leave, and, despite her expressed hope, has been unable to return to work. Furthermore, a treating physician has clearly indicated disability and inability to return to any work for a prolonged period. Thus, the ALJ's conclusion that there was "no evidence that the claimant is expected to remain off work for one year" is no longer supported by substantial evidence on the record as a whole.

*Id.* at 1070-71. The court emphasized that because the ALJ had provided a single reason for his finding – Bergmann's intent to return to work – which was directly controverted by the new evidence, the ALJ's decision was no longer supported by substantial evidence.

*Id.* at 1071.  Therefore, the case was remanded for the ALJ to determine an onset date and whether Bergmann's condition had improved, which would entitle her to a closed period of disability benefits.  *Id.*

Here, the ALJ did not rely on a single reason to deny benefits.  She found the medical evidence did not support a finding of disability for Gutierrez's physical impairments because although it demonstrated Gutierrez suffered pain, she had been prescribed medication and was able to move in a satisfactory manner.  Her treating physician for her breast cancer also released her to work with no restrictions in June 2012 following her breast cancer surgery.  As for her mental impairments, the evidence suggested moderate limitations based on GAF scores and symptoms such as flat affect, slowed and delayed speech/motor function and depressed mood.  AR 18.  To the extent Gutierrez alleged more severe limitations in work-related functions, the ALJ found those allegations were not credible for various reasons.  The ALJ concluded the longitudinal medical record and Gutierrez's testimony did not support a finding of disability and the record failed to establish that Gutierrez had been disabled for at least 12 continuous months.

The new evidence does not undermine the ALJ's decision because I find the ALJ would not have given great weight to Dr. Dean's opinion, as expressed in the RFC questionnaire and the letter.  Dr. Dean's findings in the RFC questionnaire are inconsistent with the majority of his treatment notes.  In the RFC questionnaire, he identifies "marked" and "extreme" limitations and "poor/none" in ability to perform mental work-related functions, AR 630-33, yet his treatment notes assign GAF scores indicating moderate limitations at most.  Moreover, Dr. Dean reported in the RFC questionnaire that Gutierrez had experienced four or more episodes of decompensation – each lasting two weeks – in one year.  AR 632.  However, his treatment notes do not even remotely suggest that Gutierrez suffered episodes of decompensation of such severity and frequency.

Given these extreme differences, I have no doubt the ALJ would have discredited Dr. Dean's opinion. *See Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) ("We have upheld an ALJ's decision to discount a treating physician's [Medical Source Statement] where the limitations listed on the form 'stand alone,' and were 'never mentioned in [the physician's] numerous records or treatment' nor supported by 'any objective testing or reasoning.'").

Moreover, Dr. Dean opined on limitations associated with impairments outside his area of expertise. He suggested several limitations related to Gutierrez's physical impairments, even though he is a psychiatrist. This further erodes the credibility of his opinion. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) ("the treating physician's opinion is subject to criticism as being outside his or her area of expertise."). Finally, his letter states that Gutierrez is unable to work due to her severe mental illness. This is not a medical opinion, and thus would have been disregarded by the ALJ. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

As noted above, in considering new evidence I must consider how the ALJ would have weighed that evidence if it had been part of the record at the time of the hearing. *Bergmann,* 207 F.3d at 1068. For the reasons set forth above, I conclude that the ALJ would have given little weight to the new evidence. Therefore, that evidence does not undermine the ALJ's findings at Step Three and Step Four. I will consider Gutierrez's other arguments before deciding whether the ALJ's decision is otherwise supported by substantial evidence in the record as a whole.

**B.** *Credibility Determinations*

Gutierrez argues the ALJ erred in assessing the credibility of her subjective statements. She contends her statements are credible because the limitations she provided could reasonably be expected to grow out of her impairments and the fact that her symptoms wax and wane does not make her testimony less credible. She asserts the ALJ overstated the extent of her daily activities and cited no evidence in support of her finding. Gutierrez also contends the ALJ erred in discrediting the evidence provided by Gutierrez's son, Jesse Martinez. She states it was improper for the ALJ to discredit his statement based solely on his relationship with Gutierrez and that his statements were otherwise consistent with the evidence in the record.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ did not give great weight to Gutierrez's subjective complaints. In addition to the lack of medical evidence supporting a finding of disability, the ALJ noted that Gutierrez returned to light duty work following a workers' compensation case that was pending in late 2011. She did not submit these records nor the vocational

rehabilitation records as requested. AR 19. The ALJ also noted that Gutierrez had applied for social security benefits immediately after she was diagnosed with breast cancer, but before surgery. *Id.* After surgery, she was released to work without restrictions. Gutierrez then began receiving unemployment benefits and stopped her work with vocational rehabilitation when her disability hearing was scheduled. *Id.* Finally, Gutierrez testified she was recently told by a physician assistant that x-rays indicated she might need surgery for arthritis, but Gutierrez failed to submit this evidence after the hearing as requested by the ALJ. AR 20. The ALJ found that all of these events failed to support an alleged onset date of February 3, 2012. Furthermore, she noted that Dr. Dean stated in his treatment notes from March 2012 that Gutierrez's work at a daycare was "easier on her" than her previous work at a tuxedo store. AR 362. The ALJ acknowledged the daycare work was not substantial gainful activity, but concluded that it indicated a significant RFC. The ALJ also commented on some inconsistency in the record regarding Gutierrez's level of education. AR 20. She concluded the record as a whole did not demonstrate Gutierrez's symptoms were as severe as alleged and she did not give great weight to the implicit allegation that Gutierrez was unable to engage in "any and all kinds of full-time, competitive, gainful employment on a sustained basis." AR 20.

With regard to the written statement provided by Gutierrez's son, the ALJ did not give it great weight. She noted that "[o]ut of natural concern and devotion, it is not uncommon for one to place unreasonable limitations on the daily activities of a parent, or to attribute even ordinary changes in mood to an impairment, whenever illness or injury occurs." *Id.* She also stated his implicit allegation of disability was subject to the same considerations regarding Gutierrez's credibility.

I find the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for discrediting the subjective allegations of Gutierrez and her son. Gutierrez alleges the ALJ discredited her based, in part, on periods when her symptoms had improved, which does not necessarily indicate an improvement in her overall

condition. I agree with Gutierrez that the waxing and waning of symptoms for mental impairments is not a good basis for discrediting a claimant. *See Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("Although the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim."). However, Gutierrez does not cite any part of the ALJ's decision that suggests she relied on symptom-free periods to discredit her and I find the ALJ did not take such a constrained view of the record.

The only major change in Gutierrez's condition was her overdose in December 2012. The ALJ considered the treatment notes before and after this event, including Dr. Dean's notations of stressors in Gutierrez's life at the time of her overdose and the fact that it was precipitated by alcohol abuse. AR 18, 160. After her hospitalization, Dr. Dean assigned a GAF score of 55, which is similar to what it was before her overdose. AR 610-11. He noted she still had chronic feelings of helplessness, hopelessness and despair with poor self-esteem and self-identity and her psychosocial stresses were financial, occupational and related to her other medical conditions. She was showing some improvement with medication and was able to re-start other medications that had been stopped due to her alcohol abuse. AR 610. There are no significant instances of improvement in Gutierrez's symptoms that the ALJ relied on to discredit the severity of Gutierrez's mental impairments. Rather, the evidence indicated that, at baseline, Gutierrez's mental impairments caused moderate limitations, which the ALJ incorporated into the RFC. I find the ALJ appropriately evaluated the severity of Gutierrez's symptoms as evidenced by the record as a whole.

Gutierrez also argues the ALJ overstated the extent of her daily activities. She cites page 15 of the record, which contains the ALJ's Step Three analysis. At this step, the ALJ evaluates whether an impairment meets a listing. The ALJ found Gutierrez had mild restriction in daily activities, stating that she could care for her personal needs and perform routine household tasks. AR 15. Evidence supporting this finding is Gutierrez's

work at the daycare in May 2012, when she reported working four hours a day. AR 307. However, she also reported having a hard time with personal needs due to back and right leg pain at this time. *Id.* In February 2013, she indicated she took care of her personal needs, but had to perform them slowly due to pain. AR 349. She stated her sister and son helped with household chores because her back, fingers and leg hurt too much. *Id.* At the hearing, she testified she drives to the grocery store and to her appointments, which are close to her home. AR 48-49. Gutierrez also testified she can do chores around the house such as cooking and cleaning, but indicated there were days when the pain was so bad she would have to lie down. AR 52. Gutierrez had been prescribed pain medication, but treatment notes indicated she did not always take it. AR 387.

Even if evidence in the record suggests more than a mild restriction in daily activities, it would not change the ALJ's finding at Step Three because a listing requires at least "marked" difficulties in two areas of functioning or "marked" difficulties in one area of functioning and repeated episodes of decompensation, each of extended duration. A "marked" limitation is defined as more than moderate, but less than extreme. AR 15. Even if Gutierrez's daily activities could be considered markedly limited, the record fails to support the other criteria. Moreover, the ALJ did not cite Gutierrez's daily activities as a reason to discredit her testimony. She noted that Gutierrez lived alone, drives and has cats. AR 19. She did not state whether this made Gutierrez's subjective allegations more or less credible. Therefore, any overstatement of the extent of Gutierrez's daily activities had no bearing on the ALJ's credibility determination or Step Three analysis and is not a basis for reversal.

The ALJ's other reasons for discrediting Gutierrez are supported by substantial evidence in the record as a whole. These include working and receiving unemployment benefits during the period of alleged disability, inconsistencies in the record and lack of supporting objective medical evidence. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); *Goff*, 421 F.3d at 792 ("Working generally

demonstrates an ability to perform a substantial gainful activity."); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (stating "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability."); *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (a claimant's complaints "may be discounted based on inconsistencies in the record as a whole."). Although an ALJ may not discredit a claimant's subjective allegations based *solely* on the lack of objective medical evidence supporting her assertions, the ALJ is entitled to consider it as a factor in evaluating credibility. *See Kisling v. Chater*, 105 F.3d 1255, 1258 (8th Cir. 1997) (noting the absence of medical evidence supporting subjective complaints of pain is a factor that supports the discounting of such complaints).

As for Gutierrez's son's credibility, an ALJ may discount corroborating testimony on the same basis used to discredit the claimant's testimony. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (ALJ's failure to give specific reasons for disregarding testimony of claimant's husband was inconsequential, as same reasons ALJ gave to discredit claimant could serve as basis for discrediting husband). The ALJ provided this reason, in addition to his close relationship with the claimant, to discredit his statements.

When an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young*, 221 F.3d at 1068 ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). Because the ALJ provided good reasons for discrediting the statements of Gutierrez and her son that are supported by substantial evidence, I will defer to her credibility determination.

## C.    *Hypothetical Question to VE*

Gutierrez argues the ALJ failed to fairly and fully develop the record by excluding certain limitations from the hypothetical question presented to the VE. She claims the ALJ's hypothetical should have included standing, sitting and walking limitations as well as limitations concerning her ability to interact with others and comprehend and follow directions due to her difficulty maintaining concentration.

A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'" *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)).

The ALJ provided the following hypothetical to the VE which is identical to the RFC adopted by the ALJ:

> The individual can occasionally or carry [sic] 20 pounds, frequently lift or carry 10 pounds. No restriction in stand, sit or walk; can do all four, six out of eight hours of the day. Could occasionally do postural activities, climb, balance, stoop, kneel, crouch, crawl. Should avoid concentrated exposure to cold, heat and hazards. And then I'm going to say simple, repetitive work, SVP: 1 to 2, just doesn't require extensive concentration.

AR 64. The VE testified that an individual with those limitations would be able to perform Gutierrez's past relevant work as a housekeeping cleaner. AR 64. As for other jobs in the national economy meeting these requirements, the VE testified that she would be able to perform nearly all light, unskilled work. Indeed, approximately ninety-nine

percent of jobs in that category would be available. AR 64-65. Examples of these jobs include office helper, production assembler and kitchen helper. AR 65.

I find the ALJ accounted for all of Gutierrez's credible limitations in the hypothetical question and RFC. The ALJ explained there was little medical evidence in the record supporting any physical limitations. While x-rays and MRIs verified Gutierrez has degenerative disc disease, physical examinations revealed she has normal gait, good strength, normal deep tendon reflexes and good range of motion in all extremities. AR 17, 19, 395-96, 441, 446, 513, 515, 565. The ALJ included a limitation of light work recognizing that Gutierrez's back issues do cause pain. However, Gutierrez has been prescribed pain medication, which treatment notes indicate she does not take. AR 387. To the extent Gutierrez claims she has additional limitations in the areas of standing, sitting and walking, she failed to submit medical or other evidence of this, such as her worker's compensation records or vocational rehabilitation records which the ALJ requested be added to the record. AR 19. It is the claimant's burden to prove she is unable to perform past relevant work through Step Four. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). I find the additional limitations asserted by Gutierrez are not supported by the record and were properly excluded from the RFC and hypothetical.

The mental impairments provided in the RFC and hypothetical are also supported by substantial evidence in the record as a whole. The ALJ accounted for limitations associated with difficulty maintaining concentration by providing for simple, repetitive work with a SVP or 1 or 2[5] that would not require extended concentration in the RFC.

---

[5] "SVP" refers to Specific Vocational Preparation, which is defined in Appendix C of the *Dictionary of Occupational Titles* as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A SVP of 1 equates to a short demonstration only and a SVP of 2 equates to anything beyond short demonstration up to and including 1 month. *See Dictionary of Occupational Titles,* Appendix C.

AR 16. These limitations clearly encompass Gutierrez's concerns of difficulties with comprehending and following directions. Gutierrez contends the ALJ should have also included a limitation of limited contact with co-workers and the general public. While Dr. Dean has diagnosed Gutierrez with panic disorder with agoraphobia,[6] the record lacks other evidence (beyond Gutierrez's own statements) demonstrating that she has difficulty interacting with others. For instance, Gutierrez testified she left most of her previous jobs due to back pain, or other reasons unrelated to difficulties with social interactions. AR 43-44, 60, 374. Gutierrez's treatment notes from her therapist also indicate that in April 2012, Gutierrez had been "spending time with family, friends and attending church." AR 372. Her therapist encouraged her to continue social activities and get out of the house as much as possible. AR 374. Gutierrez was praised at later sessions for following this recommendation. AR 375, 377. Based on the evidence in the record and the ALJ's credibility determination, I find the ALJ did not err by excluding a social functioning limitation in the RFC or hypothetical.

To conclude, I find the ALJ included all of Gutierrez's credible limitations in the RFC and hypothetical, which are supported by substantial evidence in the record as a whole. The ALJ did not err in this aspect of her decision.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Gutierrez was not disabled be **affirmed**, and that judgment be entered in favor of the Commissioner and against Gutierrez.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the

---

[6] Agoraphobia is defined as "[a] mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." Stedman's Medical Dictionary, 10590 (27th ed. 2000).

service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well aSs the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 25th day of June, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE